IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

RAHCIEF COLLIER,

               Petitioner,

vs.

SUPERINTENDENT, Coxsackie
Correctional Facility,

               Respondent.

No. 9:18-cv-01104-JKS

MEMORANDUM DECISION

      Rahcief Collier, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Collier is in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Coxsackie Correctional Facility. Respondent has answered the Petition, and Collier has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

      In 2011, sixteen-year-old Collier was charged with attempted second-degree murder, first-degree assault, four counts of first-degree robbery, two counts of attempted first-degree robbery, first-degree criminal use of a firearm, and second-degree criminal use of a firearm after he and Levon Newell devised a plan to rob Gary Donnelly. Collier lured Donnelly to a parking lot under the pretext that Collier wished to purchase drugs. When Donnelly arrived at the prearranged location with Denaya Tremont, Collier and Newell pulled Tremont from the car and stole her iPhone. Collier aimed a sawed-off shotgun at Donnelly, demanded his money, and shot Donnelly in the forearm. Collier and Newell were arrested and brought to the Troy Police

Department.  After arriving in the station's interview room, Collier was read his *Miranda*[1] rights and signed a written waiver.  Collier then made a statement admitting that he had planned the robbery and had shot Donnelly because Donnelly had "disrespected" him.

Following a suppression hearing pursuant to *Huntley*[2] and *Wade*,[3] the trial declined to suppress Tremont's identification of Collier or Collier's statements to law enforcement.  Collier proceeded to a jury trial on October 29, 2012.  One week later, the jury found Collier not guilty of attempted second-degree murder, but guilty of first-degree assault, the four first-degree robberies, the two attempted first-degree robberies, and the criminal use of a firearm counts.  The trial court sentenced Collier to an aggregate imprisonment term of 20 years, followed by 5 years of post-release supervision.

Prior to his direct appeal proceedings, Collier moved *pro se* to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on the grounds that: 1) the court erred in not holding an independent source hearing to address the reliability of the police-conducted identification procedure; 2) the prosecutor delayed in responding to the omnibus motion and discovery demands; and 3) trial counsel was ineffective for failing to move to dismiss the indictment on the basis of the prosecutor's delayed responses.  The county court

---

[1]     *Miranda v. Arizona*, 384 U.S. 436 (1966) (a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings).

[2]     *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

[3]     *United States v. Wade*, 388 U.S. 218 (1967).  The term "*Wade* hearing" is a shorthand reference to a hearing to determine whether a defendant's right to counsel at an identification procedure was honored.

denied the motion in a reasoned, unpublished opinion issued on June 4, 2014, and the Appellate Division summarily denied Collier's application for leave to appeal.

Collier filed another *pro se* § 440.10 motion to vacate the judgment.  This second pre-appeal motion alleged that: 1) his statement should have been suppressed because the detectives knew Collier had a lawyer and could not waive his right to counsel; 2) Collier's warrantless search and seizure was illegal; 3) counsel was ineffective for failing to ascertain certain specifics of the People's plea offer; 4) the trial court erred in admitting the videotaped statement; and 5) Collier's conviction was against the weight of the evidence.  The county court denied the motion on July 27, 2016, finding the claims largely procedurally barred under CPL § 440.10(2)(b) because the underlying judgment was appealable or pending on appeal.

Collier also sought to be re-sentenced in county court, challenging the evidence proving his guilt of first-degree assault and asking the court to re-sentence him as a youthful offender and taking into account his substance abuse issues.  The county court denied the motion on November 20, 2014, in a reasoned, unpublished opinion.

Through counsel, Collier then appealed his conviction, arguing that: 1) his convictions were not supported by legally sufficient evidence and were against the weight of the evidence; 2) the prosecutor committed misconduct by making improper and prejudicial comments during summation; and 3) Collier's sentence was harsh and excessive.  Collier also submitted a *pro se* supplemental brief in which he argued that: 1) the police lacked probable cause to arrest him, and thus his statements to law enforcement should have been suppressed; and 2) the court should

have suppressed evidence that the prosecution did not properly notice under CPL § 710.30.[4]  The

Appellate Division unanimously affirmed the judgment against Collier in a reasoned opinion

issued on January 19, 2017.  *People v. Collier*, 46 N.Y.S.3d 276, 282 (N.Y. App. Div. 2017).

Collier filed a counseled application for leave to appeal in the New York Court of Appeals,

raising only his sentencing claim.  The appellate court denied leave without comment on

September 24, 2017.  *People v. Collier*, 89 N.E.3d 521, 521 (N.Y. 2017).

After his direct appeal had commenced, Collier filed three additional *pro se* CPL

§ 440.10 motions to vacate the judgment on ineffective assistance, prosecutorial misconduct, and

speedy trial grounds.  The county court denied these motions, and the Appellate Division

summarily denied Collier's applications for leave to appeal.

Collier also moved to set aside his sentence pursuant to CPL § 440.20, arguing that the

sentencing court failed to adjudicate him a first-time felony offender and demonstrated its bias

against Collier when it refused to adjudicate him a youthful offender.  The county court denied

Collier's motion in a reasoned, unpublished decision issued on June 21, 2018, and the Appellate

Division denied leave to appeal on September 24, 2018.

While some of his post-conviction relief proceedings were still pending in state court,

Collier timely filed the instant *pro se* Petition for a Writ of Habeas Corpus to this Court on

September 10, 2018.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1)(A).  Briefing is now

complete, and the Petition is before the undersigned judge for adjudication.

---

[4]      This provision requires the prosecution to give a defendant notice of its intention
to offer certain evidence at trial, and specify the evidence intended to be offered.  N.Y. CRIM.
PROC. LAW § 710.30.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Collier raises five grounds for relief.  First, Collier argues that the verdict was against the weight of the evidence.  He next contends that the prosecutor committed misconduct through improper comments during summation.  Third, Collier avers that his sentence is harsh and excessive.  Collier additionally claims that the police lacked probable cause to arrest him.  Finally, Collier argues that trial counsel was ineffective for failing to pursue the defense's *Dunaway*[5] request as to the circumstances of Collier's arrest.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).  The term unreasonable is a common term in the legal world.  The Supreme Court has cautioned, however, that the range of

---

[5]     A *Dunaway* hearing is used "to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial."  *Montgomery v. Wood*, 727 F. Supp. 2d 171, 185-85 (W.D.N.Y. 2010); *see Dunaway v. New York*, 442 U.S. 200 (1979).  In this case, the Court rejected counsel's initial request for a *Dunaway* hearing and held a hearing pursuant to *Wade* and *Huntley* instead.  Counsel did not renew the *Dunaway* request.

reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that

the state court decided the claim on the merits and the decision rested on federal grounds.  *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

**Ground 1.**    *Verdict Against the Weight of the Evidence*

Collier first argues that the jury's verdict was against the weight of the evidence.  As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review.  *See McKinnon v. Superintendent*, *Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011).  "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available."  *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted).  "A weight of the evidence argument is a pure state law claim grounded in [CPL] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations."  *Id.*

(citation and internal quotation marks omitted). The Court therefore denies Collier's weight of the evidence claim on that basis.

Moreover, even if Collier had properly raised before this Court a sufficiency of the evidence claim, he would not be entitled to relief.[6] As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the New York court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this

---

[6] Respondent urges the Court to deny as unexhausted and defaulted any construed legal insufficiency claim. But at least some federal courts in this Circuit have concluded that presenting a weight of the evidence claim without more also raises a federal sufficiency of the evidence claim for purposes of habeas exhaustion. *See, e.g.*, *Williams v. LaValley*, No. 9:12-cv-01141, 2014 WL 1572890, at *3 (N.D.N.Y. Apr. 17, 2014); *Martin v. Brown*, No. 08-CV-0316, 2010 WL 1740432, at *7-8 (E.D.N.Y. Apr. 29, 2010). Indeed, the Second Circuit has suggested in dicta that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes. *See Liberta v. Kelly*, 839 F.2d 77, 80 n.1 (2d Cir. 1988); *see also Wilson v. Heath*, 938 F. Supp. 2d 278, 290 (N.D.N.Y. 2013) (noting that "the Second Circuit [in *Liberta*] has suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes"). In an abundance of caution, this Court will assume that the Second Circuit will ultimately clearly hold that, for exhaustion purposes, the presentation of a weight of the evidence claim is sufficient to exhaust a federal sufficiency of the evidence claim and address the merits of the claim.

Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76; *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

As an initial matter, much of Collier's challenge to his conviction is procedurally barred from habeas review on adequate and independent grounds. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the majority of Collier's claim unpreserved for appellate review, the Appellate Division relied upon CPL §§ 330.30(1) and 470.05(2), New York's contemporaneous objection rule, which "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably

prompted a judge to correct them during criminal proceedings," *Downs v. Lape*, 657 F.3d 97,

103 (2d Cir. 2011).  New York law requires that "[t]o preserve . . . a challenge to the legal

sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the

argument must be 'specifically directed' at the error being urged."  *People v. Hawkins*, 900

N.E.2d 946, 950 (N.Y. 2008).  New York's contemporaneous objection rule has long been

considered an "adequate and independent ground" that bars federal habeas review.  *See Whitley*

*v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011); *see also Downs*, 657 F.3d at 102-04.  As the record

supports that defense counsel raised in the motion for a trial order of dismissal only Collier's

challenge to the proof of attempted first-degree robbery, the Appellate Division properly applied

CPL § 470.05(2), and Collier's challenges to the remainder of his convictions must be denied on

that basis.

     In any event, Collier fails to show that the Appellate Division was unreasonable in

concluding, in the alternative, that Collier was not entitled to relief on the merits of any portion

of his claim:

> As pertinent here, a person is guilty of robbery in the first degree when he or she "forcibly steals property and when, in the course of the commission of the crime . . ., he [or she] . . . [c]auses serious physical injury to any person who is not a participant in the crime[ ] or . . . [i]s armed with a deadly weapon" (Penal Law § 160.15[1], [2]). Additionally, a person is guilty of attempted robbery in the first degree when, with intent to forcibly steal property, he or she engages in conduct which tends to do so, and when, in the course of the attempted commission of the crime, he or she causes serious physical injury to a nonparticipant in the crime or is armed with a deadly weapon (*see* Penal Law §§ 110.00; 160.15[1], [2]).  Further, a person is guilty of assault in the first degree when, "[w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person ... by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]).  Finally, a person is guilty of criminal use of a firearm in the first degree and criminal use of a firearm in second degree when he or she commits class B and C violent felony offenses (*see* Penal Law § 70.02[1][a], [b]) and possesses a loaded, deadly weapon from which a shot "readily capable of producing death or other serious injury may be discharged" (Penal Law §§ 265.08[1]; 265.09[1] [a]).

Here, the trial evidence established that, on the evening in question, [Collier] and his accomplice formulated a plan to rob the male victim, who [Collier] admitted in a statement to police he knew to sell drugs and carry cash.  In his written statement to police, which was admitted into evidence,[FN1] [Collier] stated that the male victim had "disrespected" him the night before and that he arranged the meeting so that he and his accomplice could rob the male victim.  [Collier] stated that, after obtaining a gun with a "sawed [-]off" barrel, he approached the victims' vehicle and pointed the gun at the male victim, while his accomplice pulled the female victim out of the vehicle, entered the vehicle, began going through the male victim's pockets and asked the male victim, "Where's the money at?"  [Collier] asserted that his accomplice and the male victim were "tusslin[g]" inside the vehicle, while he hit the male victim with the wooden part of his gun.  [Collier] stated that the male victim grabbed the gun, and he "stepped back[,] . . . gave the gun a yank and the gun went off."

FN1.   A video of [Collier's] police interview was also admitted into evidence.

[Collier's] statements to police were sufficiently corroborated by the testimony of both victims, as well as the responding police officers (*see* CPL 60.50).  The male victim testified that, after [Collier] contacted him to buy drugs, he and the female victim arrived at the prearranged location and were thereafter approached on opposite sides of the vehicle by defendant and his accomplice.  He asserted that [Collier] approached the driver side of the vehicle—where he was seated—with what appeared to be a "cut [-]down" shotgun, placed the gun roughly six inches from his head and demanded that he give defendant "everything."  Both victims testified that [Collier's] accomplice forcibly pulled the female victim from the passenger side of the vehicle.  The male victim stated that [Collier's] accomplice thereafter leaned inside the vehicle, started grabbing at his possessions, including his cell phone, "money in [his] sweatshirt pocket" and his keys, and successfully pulled his house key and key chain from the set of keys in the ignition.  The male victim further testified that [Collier] hit him in the head with the gun as he was trying to defend himself and that, as he had his "hand about in front of his face and his elbow bent pointing up," he was shot.  As established by physician testimony, three surgeries were required to address the male victim's gunshot wound, the first of which repaired life-threatening damage to his arteries and nerves.

The female victim consistently testified that [Collier] and his accomplice approached the vehicle on both sides and were yelling "[g]ive me your stuff."  She stated that [Collier's] accomplice "grabbed" her out of the car and took her cell phone, at which point she ran and hid.  She testified that she heard a gunshot and witnessed the male victim bleeding from his arm.  A responding police officer testified that he heard "a loud bang," came upon the male victim bleeding profusely from his arm and observed a set of keys several yards from the crime scene.  Another responding police officer testified that he observed damage to and blood on the vehicle.

[Collier] argues that his convictions of attempted robbery in the first degree were not supported by legally sufficient evidence because the proof failed to establish that either he or his accomplice came close to forcibly stealing cash from the victims.  We

disagree.  By all accounts, including [Collier's] own statements to police, [Collier] and his accomplice demanded that the male victim turn over his money.  While the male victim testified that he had over $4,200 in cash locked in the center console of the vehicle and that he refused to turn this money over, he also testified that [Collier's] accomplice came in through the passenger side of the vehicle and grabbed at the console and the money in his sweatshirt pocket.  Viewing the evidence in the light most favorable to the People, and particularly considering that the demands for money occurred while defendant's accomplice was inside the vehicle grabbing at the male victim's possessions and while defendant was pointing a sawed-off shotgun at the male victim and striking him with it, we are satisfied that a valid line of reasoning and permissible inferences existed from which a rational jury could have concluded that, with intent to forcibly steal property, [Collier]—independently and through the actions of his accomplice (*see* Penal Law § 20.00)—engaged in conduct which tended to do so while armed with a deadly weapon and caused serious physical injury to the male victim in the process.  Viewing the evidence in a neutral light and according deference to the jury's credibility assessments, we are similarly satisfied that [Collier's] convictions for attempted robbery in the first degree are not against the weight of the evidence.

As for [Collier's] remaining convictions, the trial evidence established that defendant and his accomplice planned the robbery, including obtaining the sawed-off shot gun, and that [Collier] aided his accomplice in forcibly stealing a cell phone from the female victim and a key and key chain from the male victim, thereby giving rise to the findings of guilt of robbery in the first degree under a theory of accomplice liability (*see* Penal Law § 20.00).  Further, with respect to assault in the first degree, while [Collier] argued at trial that he did not intend to shoot the male victim, the jury was entitled to reject this defense, as [Collier's] intent to cause serious physical injury could be readily inferred from the circumstances, as well as [Collier's] conduct of directing the sawed-off shotgun roughly six inches from the male victim's head, striking the male victim with the gun as he struggled with the accomplice inside the vehicle and shooting the male victim after he grabbed the gun.  Finally, the evidence established that [Collier] committed class B and C violent felony offenses and possessed a loaded, deadly weapon from which a shot was discharged and caused serious injury.  Accordingly, deferring to the jury's credibility determinations and having reviewed and weighed the evidence in a neutral light, we are satisfied that the verdict as to the remaining crimes was not against the weight of the evidence.

*Collier*, 46 N.Y.S.3d at 278-81 (case citations omitted).

Collier argues, as he did on direct appeal, that there was insufficient evidence to prove that he knowingly possessed a loaded firearm and intended to shoot Donnelly because the People failed to contradict his statement that he did not know that the gun was loaded.  But viewing the evidence in the light most favorable to the prosecution, and in line with the *Jackson* sufficiency

standards, there was abundant evidence from which a rational juror could have inferred the

requisite intent.  From Donnelly's testimony that the loaded round was visible, the jury could

have rationally inferred that Collier could see for himself that the gun was loaded.  The

Appellate Division also reasonably concluded that the jury could rationally infer from the

circumstances of the case, including "[Collier's] conduct of directing the sawed-off shotgun

roughly six inches from the male victim's head, striking the male victim with the gun as he

struggled with the accomplice inside the vehicle and shooting the male victim after he grabbed

the gun," that Collier knew that the firearm was loaded and that he intended to shoot Donnelly.

*Collier*, 46 N.Y.S.3d at 281.  Collier is thus not entitled to relief on this ground in any event.

Ground 2.      *Prosecutorial Misconduct*

Collier next contends that the prosecutor's summation remarks, which included a

misstatement of law and a misstatement of fact, deprived him of a fair trial.  Respondent urges

the Court to deny the claim as wholly unexhausted.  This Court may not consider claims that

have not been fairly presented to the state courts.  28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*,

541 U.S. 27, 29 (2004) (citing cases).  Exhaustion of state remedies requires the petition to fairly

present federal claims to the state courts in order to give the state the opportunity to pass upon

and correct alleged violations of its prisoners' federal rights.  *Duncan v. Henry*, 513 U.S. 364,

365 (1995).  A petitioner must alert the state courts to the fact that he is asserting a federal claim

in order to fairly present the legal basis of the claim.  *Id.* at 365-66.  An issue is exhausted when

the substance of the federal claim is clearly raised and decided in the state court proceedings,

irrespective of the label used.  *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).  To be

deemed exhausted, a claim must also have been presented to the highest state court that may

consider the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted."  *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

A review of the record reveals that Collier did not raise his prosecutorial misconduct claim in his leave application to the New York Court of Appeals.  Consequently, the claim is unexhausted.  Moreover, because Collier may not now return to state court to exhaust it, the claim may be deemed exhausted but procedurally defaulted from habeas review.  *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

In any event, even if Collier's claim is procedurally defaulted, this Court may nonetheless deny his claim on the merits and with prejudice.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  This is particularly true where the grounds raised are meritless.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).  Accordingly, the Court declines to dismiss the unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claim.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* at 171 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)).  Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety, the verdict probably would have been different.

Here, the Appellate Division concluded that the improper comments did not deprive Collier of a fair trial:

> [Collier] also argues that several improper comments made by the prosecution during summation deprived him of a fair trial, including a misstatement that proof of intent was not required to convict him for robbery in the first degree and attempted robbery in the first degree and remarks suggesting that he knew that the firearm was loaded.  [Collier], however, objected only to the prosecution's comment that he knew the firearm was a break-barrel gun because he broke it open and, in the process of so doing, saw that it was loaded and, thus, only that claim is preserved for appellate review.  While the challenged comment indeed appears to have misstated the evidence, we are unconvinced that the misstatement rose to such a level as to deprive [Collier] of a fair trial.  Moreover, even if we were to reach [Collier's] unpreserved challenges, we would not find that the prosecutor's misstatement of the law or other comments deprived [Collier] of a fair trial, as County Court correctly instructed the jury on the element of intent with respect to the robbery and attempted robbery charges and, viewing the summation as a whole, the People did not engage in a pervasive and flagrant pattern of misconduct so as to deprive [Collier] of a fair trial.

*Collier*, 46 N.Y.S.3d at 281-82 (citations omitted).

15

Although the inaccuracies in the prosecutor's comments certainly give this Court pause, the Appellate Division was not unreasonable in concluding that those comments did not rise to the level of a federal constitutional violation. "[A] reviewing court must evaluate the challenged remarks in the context of the trial as a whole." *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994). The record here suggests that the comments were minor in an otherwise fair proceeding. Moreover, as the Appellate Division noted, the jury was correctly instructed on the law, and the jury is presumed to obey the court's instructions. *See, e.g.*, *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) ("juries are presumed to follow their instructions") (quoting *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Whitten*, 610 F.3d 168, 191 (2d Cir. 2010) ("We presume that juries follow instructions."); *United States v. Sabhnani*, 599 F.3d 215, 240 (2d Cir. 2010). Accordingly, Collier's prosecutorial misconduct claim fails.

**Ground 3.**    *Harsh and Excessive Sentence*

Collier additionally argues that his sentence, which consists of an aggregate 20-year imprisonment term followed by 5 years of post-release supervision, is harsh and excessive in light of his age[7] and lack of criminal history. It is well-settled, however, that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal question cognizable on habeas review where the sentence was within the range prescribed by state law). Here, Collier does not dispute that

---

[7]    Collier was 16 years old when he committed the crimes at issue.

his sentence fell within the state's statutory guidelines, and thus his harsh and excessive sentence claim is not cognizable on federal habeas review.

To the extent that Collier's claim could be construed to assert an Eighth Amendment claim of cruel and unusual punishment, he cannot prevail on that claim either.  The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII; *see also Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).  This constitutional prohibition "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense."  *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quotations omitted).  While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle.  *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1); *see also Rummel v. Estelle*, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").  In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history.  *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

The United States Supreme Court has defined specific rights applicable to juvenile offenders.  In *Roper v. Simmons*, the Supreme Court held that sentencing juveniles under the age

of 18 to death is unconstitutional.  543 U.S. 551, 575 (2005).  Following that, in *Graham v.*
*Florida*, the Supreme Court held that it is unconstitutional to sentence a juvenile offender to
LWOP in a non-capital case.  560 U.S. 48, 75 (2010).  In *Miller v. Alabama*, a case involving a
juvenile who was 14 years old at the time he committed a murder, the Supreme Court held that a
mandatory LWOP violates the Eighth Amendment where a sentencing court has no discretion to
consider the defendant's youth or other "mitigating qualities."  567 U.S. at 476.

 The Supreme Court's recent jurisprudence regarding juveniles does not, however,
warrant relief here because Collier was not sentenced to the death penalty or LWOP.  His
20-year term of imprisonment thus does not run afoul of existing Supreme Court authority.  Nor
can Collier demonstrate that this is one of the exceedingly rare cases in which the sentence
imposed raises an inference of gross disproportionality when compared to the crime and relevant
criminal history. *See e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years
to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77
(two consecutive sentences of 25 years to life for petty theft was not cruel and unusual).

 Furthermore, to the extent Collier renews his direct appeal contention that his 20-year
aggregate prison sentence was imposed as a penalty for rejecting a plea offer of 15 years and
proceeding to trial, Collier fails to demonstrate that he was subjected to vindictive sentencing.
The Supreme Court has determined that due process is violated when a penalty is imposed upon
a person for electing to exercise a constitutionally protected right, including the right to have a
jury trial in a criminal case.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  "However,
the mere fact that the sentence imposed following trial is greater than the offer made during plea
negotiations, does not indicate that a petitioner has been punished for exercising his right to

proceed to trial." *Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) (citation

omitted); *see also Naranjo v. Filion*, No. 02 Civ. 5449, 2003 WL 1900867, at *9-10 (S.D.N.Y.

Apr. 16, 2003) (rejecting petitioner's argument that the disparity between the prosecution's

pretrial plea offer of 5-10 years and his subsequent sentence of 25-50 years suggested

vindictiveness).  Here, while Collier ultimately received 5 more years than the plea offer he

rejected, there is no evidence in the record to suggest that vindictiveness or any other improper

criterion influenced the trial court when imposing Collier's sentence.

In short, the Appellate Division's finding that Collier's 20-year sentence without parole

restrictions was not grossly disproportionate in light of the circumstances of the offense was not

contrary to, nor an objectively unreasonable application of, any clearly-established federal law

and was not based upon an unreasonable determination of the facts.  Put simply, Collier's claim

fails to raise a federal question.  *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68.  Collier

thus cannot prevail on any argument in support of his sentencing claim.

**Ground 4.**     *Illegal Arrest*

Collier further claims that statements he made to law enforcement should have been

suppressed because they were obtained as a result of a warrantless arrest following a pretextual

traffic stop.  On direct appeal, the Appellate Division found this claim abandoned and

unpreserved for appellate review:

> Initially, [Collier] argues that the police lacked probable cause to arrest him and,
> thus, that his statements to police should have been suppressed.  While [Collier] made a
> general, pretrial request for a *Dunaway* hearing, only a combined *Huntley/Wade* hearing
> was held and it is unclear from the record whether [Collier] withdrew his request for a
> *Dunaway* hearing or whether that branch of his omnibus motion was overlooked by
> County Court.  Nevertheless, by either failing to pursue his application for a *Dunaway*
> hearing or alert the court that it had overlooked his request, [Collier] abandoned such
> request, thereby rendering unpreserved his appellate contention that the police lacked

probable cause to arrest him, and we decline to take corrective action in the interest of justice.

*Collier*, 46 N.Y.S.3d at 278.

While the Appellate Division's finding would render his challenge procedurally barred from federal review, in any event, any challenge to his arrest and the admissibility of his resulting statements is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[8]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide

---

[8]     The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled, and the record reflects that Collier had an opportunity to fully adjudicate the matter in state court. *See id.* at 70 & n.1. Collier is therefore not entitled to relief on this ground.

**Ground 5.**   *Ineffective Assistance of Counsel*

Finally, Collier claims that trial counsel rendered ineffective assistance because, although counsel asked the court to conduct a *Dunaway* hearing to determine whether Collier's arrest was supported by probable cause, counsel did not pursue or renew the request after the court ordered only a *Wade/Huntley* hearing. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Collier must show that his attorney did not represent him

within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for this ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840

22

N.E.2d at 126.  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall."  *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.  *Id.* at 124, 126.  The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.  *Id.* at 125.

Collier's ineffective assistance claim must fail, however, even under the more favorable New York standard.  As an initial matter, this claim is also procedurally barred from federal habeas review.  Collier raised this claim in his CPL § 440.10 motion dated March 21, 2017.  The county court denied the claim as procedurally barred under CPL § 440.10(3)©[9] because Collier did not raise the claim in his initial CPL § 440.10 motion.

In any event, county court's alternative rejection on the merits is both reasonable and fully supported by the record.  As the county court determined, any alleged deficiency in counsel's failure to pursue a full *Dunaway* hearing "had no impact on the case."  County court explained:

> Although the court did not specifically grant and conduct a *Dunaway* hearing, the court did hold *Huntley* and *Wade* hearings, after which it found that the police properly conducted a photo array identification procedure with the victim, resulting in the victim's identification of [Collier] as the shooter.  Since a photo array provides probable cause for

---

[9]    That section provides that a court may deny a motion to vacate judgment where, "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so."  N.Y. CRIM. PROC. L. § 440.10(3)©.

an arrest, no prejudice to [Collier] resulted from counsel's purported failure to pursue a *Dunaway* hearing.

As Collier fails to show that he was prejudiced by counsel's inaction, his *Strickland* claim also must fail.

### V. CONCLUSION

Collier is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253©; *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 11, 2020.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge